IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| RUBEN ESCANO,<br><br>      Plaintiff,<br><br>v.<br><br>CONCORD AUTO PROTECT, INC., FOREVERCAR, LLC, LIBERTY MUTUAL GROUP, INC., LIBERTY MUTUAL AUTO AND HOME SERVICES, LLC, ALON SALMAN, and DOES 1-10 INCLUSIVE AND ALL OF THEM,<br><br>      Defendants. | Case No. 2:21-cv-00223-MV-CG |

**DEFENDANT FOREVERCAR, LLC'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

    Defendant ForeverCar, LLC ("ForeverCar") hereby moves for an order entering judgment in favor of ForeverCar, pursuant to Federal Rule of Civil Procedure 12(c). In accordance with D.N.M.LR-Civ. 7.1, ForeverCar attempted to determine Plaintiff's position regarding this Motion, but as of the time of filing ForeverCar has not received a response from Plaintiff and therefore presumes his opposition.

**PRELIMINARY STATEMENT**

    Despite Plaintiff's proficiency in filing lawsuits for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), Plaintiff's Complaint fails to allege any facts showing that ForeverCar made any of the thirteen telephone calls on which Plaintiff bases his claim. In fact, according to Plaintiff, *not a single caller* for any of the thirteen calls identified himself or herself as calling on behalf of ForeverCar. Plaintiff alleges that the callers identified themselves as calling from "Auto Health Services," "Auto Warranty Services,"

or "government agencies," and one agent identified himself as working for Liberty Mutual. Plaintiff's only basis for alleging that ForeverCar actually made the calls—despite the callers' self-identification of entities *other than* ForeverCar—is that a ForeverCar webpage offered Liberty Mutual customers a discount on ForeverCar's products. Based on that single webpage, Plaintiff leaps to the conclusion that the caller identifying himself as from Liberty Mutual was lying and was really calling on behalf of ForeverCar, and that all the other calls by supposed "government entities" and "Auto Warranty Services" were actually ForeverCar, too. Courts in this circuit have repeatedly held such conclusory conspiracy theories fail to maintain a TCPA claim, and the Tenth Circuit has even held that such allegations are sanctionable.

In truth, ForeverCar did not make any of the calls alleged in the Complaint, and none of the phone numbers in question were ever associated with ForeverCar. In fact, a simple internet search establishes that certain of the telephone numbers Plaintiff alleges called him are known spam numbers, including for spam calls related to social security benefits that have nothing to do with ForeverCar's business.

Plaintiff's Complaint conspicuously omits the only connection he has with ForeverCar: That on September 19, 2019, he requested ForeverCar contact him on his cell phone to provide a quote for his vehicle. Interestingly, on that same day, Plaintiff also requested co-defendant Concord Auto Protect, Inc. contact him about a quote for its services. Responding to his request, a ForeverCar representative contacted him 20 minutes later and identified herself as calling from ForeverCar when Plaintiff answered the phone. Plaintiff told the ForeverCar representative that she had the wrong number and ForeverCar never contacted him again. Rather, Plaintiff called ForeverCar five days before filing the Complaint to confirm that ForeverCar offered products and services in New Mexico. Thus, Plaintiff well knows that ForeverCar did not call him from

known spam numbers pretending to be other entities, which is why Plaintiff offers no facts to support his bald assertion that ForeverCar made the calls in question.

Because the Complaint does not and cannot establish that ForeverCar made any of the calls about which Plaintiff complains, the Complaint must be dismissed and a judgment entered in favor of ForeverCar.

## BACKGROUND

Plaintiff commenced this action on February 10, 2021, by filing a Complaint in the Sixth Judicial District Court, Grant County, New Mexico, No. D-608-CV-2021-00038, alleging multiple violations of the TCPA. This is at least the fourth TCPA Complaint that Plaintiff has filed, and at least the second concerning alleged calls supposedly offering auto warranty services.[1]

As to ForeverCar, Plaintiff alleges that he received thirteen telephone calls from thirteen different phone numbers, which he attributes to ForeverCar without any factual basis. (Compl., ¶¶ 23, 28, 34, 43, 45, 47, 49, 51, 53, 56-58, 60-61.) According to the Complaint, not a single caller for any of the thirteen calls identified himself or herself as calling on behalf of ForeverCar. For twelve of the calls in question, Plaintiff specifically alleges that the caller "stated neither the true name of its company nor a callback number[.]" (*Id.* ¶¶ 28, 43, 45, 47, 49, 51, 53, 56-58, 60-61.) Instead, he alleges that those twelve calls began with a prerecorded message identifying the callers as "Auto Health Services," "Auto Warranty Services," or "government agencies" and that for one call the "telephone agent said the company he was calling from was Liberty Mutual and

---

[1] *See Escano v. CarGuardian LLC, et al.*, No. 635-7-17 (Vt. Super. Ct.); *Escano v. Pro Custom Solar LLC, et al.*, No. 765-8-17 (Vt. Super. Ct.); *Escano v. Empire Consumer Servs.*, No. 799-8-17 (Vt. Super. Ct.).

that he works for Liberty Mutual." (*Id.* ¶¶ 15, 69.)[2]  For the thirteenth call, Plaintiff conclusorily alleges that ForeverCar "or its agents" called him using an automatic telephone dialing system ("ATDS"), but Plaintiff pleads no facts showing how he identified the caller as ForeverCar or how he knows an ATDS was used. (*Id.* ¶ 34.)

The only connection to ForeverCar that Plaintiff pleads is that a ForeverCar webpage offered Liberty Mutual customers a discount on ForeverCar's products and services. (*Id.* ¶ 70.) Nowhere does the Complaint allege facts connecting that webpage to any of the calls that form the basis of Plaintiff's Complaint, eleven of which had callers identifying themselves as an entity *other than* ForeverCar *or* Liberty Mutual.

None of the telephone numbers that were supposedly used to call Plaintiff are associated with ForeverCar, nor have they ever been associated with ForeverCar at any time relevant to the Complaint. (Answer ¶¶ 28, 34, 43, 45, 47, 49, 51, 53, 56-58, 60-61.)  Indeed, a simple internet search reveals some numbers are known spam phone numbers, at least one of which has a prerecorded message related to social security benefits, not automobile warranty plans.[3]

And Plaintiff well knows that ForeverCar does not call customers claiming to be someone else because Plaintiff affirmatively requested ForeverCar call him and a ForeverCar representative clearly identified herself when calling him in response to that request. (*See id.*, Affirmative Defenses ¶ 3.)  Specifically, on September 19, 2019, Plaintiff completed an online

---

[2] Plaintiff inconsistently alleges that the caller identified himself as calling on behalf of Liberty Mutual and that the call was made "with an artificial or prerecorded message" that "stated neither the true name of its company nor a callback number in that message." (*Compare* Compl. ¶ 60 (describing Jan. 19, 2021 call) *with id.* ¶ 69 (alleging that he spoke with a Liberty Mutual agent on the Jan. 19, 2021 call).)

[3] *Compare* https://www.nomorobo.com/lookup/201-554-0993 (noting 201-554-0993 is a number associated with a robocall concerning "Social Security disability benefits") *with* Compl. ¶ 56 (alleging ForeverCar called using the phone number 201-554-0993); *compare* https://www.nomorobo.com/lookup/201-270-0739 (noting 201-270-0739 is a known spam number) *with* Compl. ¶ 47 (alleging ForeverCar called using the phone number 201-270-0739); *compare* https://nomorobo.com/lookup/201-357-3575 (noting 201-357-3575 is a known spam number) *with* Compl. ¶ 51 (alleging ForeverCar called using the phone number 201-357-3575).

lead form on ForeverCar's website, using the phone number 201-527-8939.  (*Id.* Ex. A.)  Also on September 19, 2019, Plaintiff completed an online lead form on co-defendant Concord Auto Protect, Inc.'s website, using the same telephone number, same email address, and same vehicle information he used when filling out ForeverCar's form.  (Van Houter Ex. A.)[4]  When submitting the form to ForeverCar, Plaintiff gave "ForeverCar express written consent to call [him] at the phone number [he] provided (even if it is a mobile phone number) to discuss vehicle coverage options," using "a computer, texting technology, or other automatic dialing technology to call [him,]" but still involving "a human, not a recorded message, on the call when [he] pick[ed] up."  (Answer Ex. B.)  Approximately 20 minutes after Plaintiff submitted the online lead form, a ForeverCar representative called Plaintiff and identified herself as calling from ForeverCar, although this telephone call is not alleged in Plaintiff's Complaint.  (*Id.*, Affirmative Defenses ¶ 3.)  During the call, Plaintiff claimed that ForeverCar called the wrong person and thus, immediately after the September 19, 2019 telephone call, ForeverCar noted in its records that Plaintiff's phone number was not to be contacted.  (*Id.*)  The next communication ForeverCar had with Plaintiff was when Plaintiff called ForeverCar on February 5, 2021 to confirm that ForeverCar offers products and/or services in New Mexico.  (*Id.*)  Plaintiff filed the Complaint five days after his February 5, 2021 telephone call.

      Plaintiff offers no explanation (because he has no explanation) for why ForeverCar would call him and identify itself as ForeverCar on September 19, 2019 but use known spam telephone numbers and pre-recorded messages identifying itself as "government entities," or other non-descript auto businesses on the occasions alleged in his Complaint, or why it would claim to be

---

[4] "Van Houter Exhibit A" refers to Exhibit A to the Declaration of Andrew L. Van Houter, dated May 21, 2021 and filed contemporaneously herewith.

Liberty Mutual during one call.  His complaint is pure conjecture and is simply a conspiracy theory that fails to connect ForeverCar to any of the calls in any way.

## LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same standard for a motion to dismiss pursuant to Rule 12(b)(6).  *Adams v. Jones*, 577 F. App'x 778, 781-82 (10th Cir. 2014).  Accordingly, to survive a motion to dismiss, a plaintiff must assert "more than labels and conclusions" when providing "the grounds of his entitle[ment] to relief[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555, and there must be enough facts to "nudge . . . [a plaintiff's] claims across the line from conceivable to plausible[.]"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Courts do not accept as true "legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Soto for Estate of Jimenez v. Bd. of Cty. Comm'rs of Caddo Cty., Okla.*, 748 F. App'x 790, 793 (10th Cir. 2018) (*quoting Iqbal*, 556 U.S. at 678) (internal quotation marks and alterations omitted).  And "naked assertion[s] devoid of further factual enhancement" do not suffice.  *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted); *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  When a plaintiff fails to plead such facts and the pleadings—including exhibits attached to the pleadings—establish that the plaintiff has not stated a claim, the defendant is entitled to judgment as a matter of law.  *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d

1239, 1244 (10th Cir. 2006), *abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013); Fed. R. Civ. P. 10(c).

## ARGUMENT

I. **THE COMPLAINT FAILS TO ESTABLISH THAT FOREVERCAR MADE ANY OF THE ALLEGED PHONE CALLS TO PLAINTIFF**

Plaintiff's claims must be dismissed because Plaintiff alleges no facts establishing that ForeverCar actually made any of the calls alleged in the Complaint. Nor does the Complaint contain *any* factual allegations about any alleged agency between ForeverCar and the callers. Accordingly, the Complaint must be dismissed and judgment entered in favor of ForeverCar.

  **A.**  **The Complaint Fails to Allege ForeverCar Made Any of the Telephone Calls.**

Under the plain language of the TCPA, liability is imposed "only on the party that places the call[.]" *Mestas v. CHW Group Inc.*, --- F. Supp. 3d ---, 2020 WL 7385826, at *6 (D.N.M. Dec. 16, 2020) (Vázquez, J.). But the Complaint alleges no facts that even rise to a "speculative level," let alone facts that "nudge" the "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted); *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570). The Complaint essentially boils down to allegations that (i) Plaintiff received calls concerning automobile service and warranty plans and (ii) ForeverCar happens to sell vehicle service plans. But the Complaint does not— because it cannot—plead any facts rendering it plausible that the calls Plaintiff received came from ForeverCar. This Court and other courts have repeatedly held that even less attenuated allegations are insufficient.

In *Salmon v. CRST Expedited, Inc.*, No. 14-cv-0265, 2016 WL 47876, at *4 (N.D. Okla. Jan. 4, 2016), *aff'd* 687 F. App'x 713 (10th Cir. 2017), the *pro se* plaintiff received numerous phone calls with similar prerecorded messages advertising a multi-level marketing scheme. *Id*.

7

at *2.  Like the messages at issue here, none of the messages in *Salmon* mentioned the defendants.  *Id.*  Unlike here, however, one message mentioned a website that was owned by the individual defendant who, in turn, was the president of the corporate defendant that had "engaged in a massive telemarketing operation."  *Salmon*, 687 F. App'x at 716, 718.  Still, the court dismissed the claims because the messages had "no apparent connection to" the defendants "and there [was] no mention of any product sold by" the defendants in the messages.  *Salmon*, 2016 WL 47876, at *7.  The allegations amounted to "nothing more than an unsupported conspiracy theory based upon many layers of conjecture."  *Id.*  Moreover, the Tenth Circuit affirmed sanctions because the *pro se* plaintiff "had no objective basis to believe that [the defendant] was responsible in any way for the calls placed to his cell phone[.]"  687 F. App'x at 719.  Plaintiff's allegations here are even more conclusory.  There is *no* allegation that any of the prerecorded messages Plaintiff supposedly received contained any reference to any product, service, or business that can be traced to ForeverCar.

This Court came to a similar conclusion in *Barker v. Sunrun Inc.*, No. 18-cv-855, 2019 WL 1983291 (D.N.M. Apr. 29, 2019).  There, the plaintiff supposedly received a number of telemarketing calls concerning home solar panels.  *Id.* at *1.  Like Plaintiff alleges here, the telemarketers in *Barker* supposedly identified themselves as calling on behalf of entities other than the defendant.  *Id.* at *2.  But the plaintiff in *Barker* did allege that he possessed sworn statements from some of the telemarketers that purportedly connected the defendant to the calls.  *Id*.  Nevertheless, this Court held that the plaintiff's *ipse dixit* was insufficient to state a claim against the defendant.  *Id*. at *3-4.  Here, Plaintiff does not even offer *ipse dixit*.

In *Childress v. Deering*, No. 18-cv-00455, 2019 WL 409825, at *1 (D.N.M. Jan. 29, 2019), and *Childress v. Liberty Mutual Insurance Co.*, No. 17-CV-1051, 2018 WL 4684209, at

8

\*4 (D.N.M. Sept. 28, 2018) (Vázquez, J.), this Court similarly rejected the plaintiffs' conclusory allegations that the callers lied about their true identity. In *Deering*, the *pro se* plaintiff received calls from telemarketers that allegedly would not identify themselves but instead would "lie and give [plaintiff] the name of a fake or non-existent business[.]" 2019 WL 409825, at \*1. The plaintiff was able to identify the defendant because he obtained subscriber information for the phone number that called him and traced the number to a limited liability company the defendant had formed. *Id*. at \*3. This Court held that these allegations were insufficient to establish that the defendant made the telephone calls because the callers identified themselves as someone other than defendant. *Id*. at \*4-5. Here, Plaintiff has not even traced any of the numbers to ForeverCar. Nor can he, as they are not ForeverCar's numbers (Answer ¶¶ 28, 34, 43, 45, 47, 49, 51, 53, 56-58, 60-61), as a simple internet search would reveal. *Supra*, n.3.

In *Liberty Mutual*, the plaintiff "assert[ed] in an entirely conclusory fashion that" the caller used "a 'fake name' and that the call was made by 'Defendant's pre-recorded message robot machine.'" 2018 WL 4684209, at \*3 (citation omitted). That is exactly what Plaintiff alleges here. (Compl., ¶¶ 15, 19.) But "[t]he mere conclusion that the 'robot machine' responsible for the call belonged to Defendant, without any factual allegations to support that conclusion, does not constitute a factual allegation that, if proven, would establish that Defendant 'made,' or 'physically placed' the call to Plaintiff's cell phone." *Liberty Mutual Insurance Co.*, 2018 WL 4684209, at \*3 (citation omitted).

Plaintiff has pled no facts supporting his conclusory assertions that ForeverCar made the calls. That is because there are no facts that Plaintiff could plead. This Court should dismiss the claims.

### B.     The Complaint Fails to Plead Facts Establishing Vicarious Liability.

Plaintiff's conclusory allegations that ForeverCar "or its agents" made the calls do not save the claims.  (*See*, *e.g.*, Compl. ¶¶ 28, 34.)  While courts sometimes find vicarious liability for defendants whose agents placed the offending calls, such a theory requires a plaintiff to "'allege *some* facts regarding the relationship between an alleged principal and agent[.]'" *Mestas*, 2020 WL 7385826, at *6 (quoting *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015)) (emphasis in original).  To establish an agency, there must be allegations that (i) the principal manifested assent for the agent to act on the principal's behalf; (ii) the agent accepts the undertaking; and (iii) the agent is subject to the control of the principal.  *See id.*; *Liberty Mutual Insurance Co.*, 2018 WL 4684209, at *3; *Melito*, 2015 WL 7736547, at *6; *see also Barker*, 2019 WL 1983291, at *3-4.

Plaintiff pleads no such facts.  As in *Liberty Mutual*, the Complaint "fails to allege any agency relationship" between ForeverCar and any individual or entity allegedly responsible for making the calls because "he alleges no facts to support this conclusion."  2018 WL 4684209, at *4.  "Indeed, to the contrary, he alleges that the voice on the recorded message 'never accurately identified themselves, their employer or the sponsor of the call.  Thus, even by Plaintiff's own account, there is no factual basis to support the theory that Defendant is vicariously liable for the initial call made to Plaintiff."  *Id.* (citation omitted).  Plaintiff does not even identify the caller, let alone plead facts showing that ForeverCar assented to an agency relationship and controlled the mysterious third party.  "Accordingly, Plaintiff's allegations fail to plead any relationship, let alone an *agency* relationship, between Defendant and any other individual or entity sufficient to allege vicarious liability under" the TCPA.  *Id.* at *4 (emphasis in original) (citations omitted); *see also Barker*, 2019 WL 1983291, at *3 ("The Court notes the complaint alleges [the

defendant] had an agency relationship with the individuals or entities who actually made the offending phone calls. But this allegation constitutes a legal conclusion, and so it is not entitled to a presumption of truth.").

Plaintiff cannot connect ForeverCar to the alleged calls in any way. Judgment should be entered in favor of ForeverCar.

## II. THE COMPLAINT FAILS TO ALLEGE AN ATDS WAS USED TO MAKE THE JULY 27, 2020 PHONE CALL

The July 27, 2020 phone call is the only call for which Plaintiff does not allege the use of a pre-recorded message. (Compl. ¶ 34.) Because there was no pre-recorded message, Plaintiff must allege facts showing that an ATDS was used. *See* 47 U.S.C. § 227(b)(1)(A) (emphasis added) ("It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system *or* an artificial or prerecorded voice . . . ."). Plaintiff conclusorily alleges that ForeverCar, "or its agents, used an ATDS, or effectively-similar equipment, to call my cell phone[.]" (Compl. ¶ 34.) But the Complaint alleges no facts to support this conclusory assertion, which is an independent reason to dismiss the claims related to the July 27, 2020 call.

An ATDS is defined as equipment with the capacity "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §§ 227(a)(1)(A)-(B). The Supreme Court recently resolved a circuit split by adopting the narrower reading that only equipment that has either the capacity to store numbers using a random or sequential number generator or to produce numbers using a random or sequential number generator qualifies as an ATDS. *Facebook, Inc. v. Duguid*, --- U.S. ---, 141 S. Ct. 1163, 1167 (2021). The Supreme Court held that the other approach, which "[e]xpand[ed]

11

the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers[,]" would be using a "chainsaw . . . when Congress meant to use a scalpel." *Id*. at 1171.

Setting aside whether such functionality was used to make the call, as a threshold issue, Plaintiff must allege facts that, if proven, would establish that the equipment had the requisite functionality in the first place. It is not enough for Plaintiff to simply parrot the statutory language. *Rallo v. Palmer Admin. Servs., Inc.*, No. 18-cv-01510, 2019 WL 1468411, at *2-3 (D. Colo. Apr. 3, 2019); *Maree v. Wyndham Vacation Resorts, Inc.*, No. 19-cv-00386, 2019 WL 10250697, at *2 (D. Colo. July 17, 2019). But that is precisely all Plaintiff does with respect to the July 27, 2020 call.

Courts in this circuit and around the country have held such threadbare recitals of the definition are insufficient to state a TCPA claim, even without the additional burden recently imposed by *Facebook* to plead and prove the equipment generated the numbers randomly or sequentially. *See, e.g.*, *Rallo*, 2019 WL 1468411, at *3 (dismissing TCPA claim when the "Complaint does nothing more than recite the relevant statute"); *Maree*, 2019 WL 10250697, at *2 ("A claim is not plausible on its face when it parrots the statutory language"); *Curry v. Synchrony Bank, N.A.*, No. 15-cv-322, 2015 WL 7015311, at *2–3 (S.D. Miss. Nov. 12, 2015) (dismissing TCPA claim for insufficient factual allegations concerning the use of an ATDS and noting the "majority of courts to have considered the issue . . . have found that a plaintiff's bare allegation that a defendant used an ATDS is not enough."); *Miller v. Cain*, No. 14-2613, 2015 WL 222434, at *9 (W.D. La. Jan. 14, 2015) (dismissing TCPA claim due to plaintiff's "failure to allege anything about the call he received to suggest the use of an ATDS"); *Gardner v. Credit Mgmt., L.P.*, No. 14-cv-1677-T-17, 2015 WL 1235037, at *2 (M.D. Fla. Mar. 17, 2015)

(dismissing TCPA claim where plaintiff failed to allege the "circumstances that suggest that Defendant used an ATDS to make the telephone calls"); *Weaver v. Wells Fargo Bank N.A.*, No. 15-cv-1247-T-23, 2015 WL 4730572, at *4 (M.D. Fla. Aug. 10, 2015) (same); *Speidel v. JP Morgan Chase & Co.*, No. 13-cv-852-FtM-29, 2014 WL 582881, at *2 (M.D. Fla. Feb. 13, 2014) (dismissing claim because ATDS allegations "merely follow the language of the statute"); *Moore v. Online Info. Servs., Inc.*, No. 13-61167, 2014 WL 11696696, at *2 (S.D. Fla. Jan. 10, 2014) (citations omitted) ("Without enhancing the complaint with anything more than the statutory language, Plaintiff provides only a threadbare, 'formulaic recitation of the elements' of a TCPA cause of action, which does not suffice"); *Friedman v. Massage Envy Franchising, LCC*, No. 12-cv-02962, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (finding that statements regarding ATDS use "do nothing more than assert a speculation"); *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 983 (N.D. Ill. 2013) (dismissing TCPA claim due to "threadbare and conclusory facts that allege the elements of a *prima facie* cause of action under the [TCPA], but nothing more"); *Williams v. T-Mobile USA, Inc.*, No. 15-cv-03384, 2015 WL 5962270, at *3 (N.D. Cal. Oct. 14, 2015) (dismissing TCPA claim because "Williams has not alleged facts from which the Court could reasonably and plausibly infer that T-Mobile used an [ATDS]"); *Hunter v. Diversified Consultants, Inc.*, No. 14-cv-2198-T-30, 2014 WL 6747153, at *1 (M.D. Fla. Nov. 26, 2014) (dismissing TCPA claim because allegations did not "create any inference supporting the allegation that calls were made using an [ATDS]"); *Wallack v. Mercantile Adjustments Bureau, Inc.*, No. 14-10387, 2014 WL 1515852, at *2-3 (E.D. Mich. Apr. 18, 2014) (dismissing TCPA claim that did not allege "circumstances that would support the inference that these calls were placed with a[n] [ATDS] or an artificial or prerecorded voice.").

The result should be no different here.

## CONCLUSION

For the foregoing reasons, ForeverCar respectfully requests that this Court dismiss Plaintiff's Complaint and enter judgment in favor of ForeverCar.

Dated:  May 21, 2021

*/s/ Kevin D. Pierce*
Kevin D. Pierce
MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.
Post Office Box 2168
Bank of America Centre, Suite 1000
500 Fourth Street, N.W.
Albuquerque, New Mexico  87103-2168
Telephone:  (505) 848-1800

Andrew L. Van Houter
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  (973) 549-7018

*Attorneys for Defendant ForeverCar, LLC*

IT IS HEREBY CERTIFIED that on this 21st day of May, 2021, the foregoing was filed electronically through the CM/ECF system, causing all parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing.

MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.

By: */s/ Kevin D. Pierce*
      Kevin D. Pierce

Y:\DOX\CLIENT\10849\0001\DRAFTS\W4072189.DOCX