IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBEN ESCANO,

    Plaintiffs,

v.                                                   CV No. 21-223 MV/CG

CONCORD AUTO PROTECT, INC., et al.,

    Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff Ruben Escano's *Motion to Remand to State Court* (the "Motion"), (Doc. 11), filed April 7, 2021; Defendants Liberty Mutual Group, Inc. and Liberty Mutual Auto and Home Services, LLC's *Opposition to Plaintiff's Motion to Remand*, (Doc. 20), filed April 22, 2021; Defendant ForeverCar, LLC's *Opposition to Plaintiff's Motion to Remand to State Court*, (Doc. 22), filed April 22, 2021; Mr. Escano's *Consolidated Reply to the Liberty Defendants' and ForeverCar's Opposition to Motion to Remand*, (Doc. 32), filed May 27, 2021; and his *Notice of Completion of Briefing*, (Doc. 36), filed June 1, 2021.

On June 21, 2021, United States District Judge Martha Vazquez referred this matter to the undersigned to perform legal analysis and recommend an ultimate disposition, pursuant to 28 U.S.C. § 636(b). (Doc. 46). The Court, having considered the parties' briefing, the record, and the relevant law, **RECOMMENDS** that Plaintiff's *Motion to Remand to State Court*, (Doc. 11), be **DENIED**.

### I. Factual and Procedural Background

This case concerns a series of robocalls and robotexts transmitted to the cellular phone of Plaintiff Ruben Escano, offering vehicle service plans and extended warranties. (Doc. 1-1 at 3, ¶ 14). Over the course of a year, from approximately February 20, 2020, through February 5, 2021, Mr. Escano received at least thirty-five of these communications, thirteen of which were robocalls and twenty-two of which were robotexts. *Id.* These communications were sent despite Mr. Escano's registration with the National Do Not Call Registry. *Id.* As a result, Mr. Escano commenced this action.

On February 10, 2021, Mr. Escano, proceeding *pro se*, filed a complaint (the "Complaint"), (Doc. 1-1 at 1-18), in the Sixth Judicial District in Grant County, New Mexico. In the Complaint, he alleges Defendants Concord Auto Protect, Inc. ("Concord") and Alon Salman, operating under the direction of Defendants Liberty Mutual Group, Inc. and Liberty Mutual Auto and Home Services, LLC (collectively "Liberty Mutual"), transmitted the twenty-two robotexts." *Id.* at 5, ¶ 22. Mr. Escano alleges Defendant ForeverCar, LLC ("ForeverCar"), operating under the direction of Liberty Mutual, transmitted the thirteen robocalls. *Id.* at 5, ¶ 23.

Mr. Escano alleges that these communications "caused [him] concrete injuries in fact[,]" including "partial depletion of the charge of [his] cell phone's battery, a partial depletion of the lifespan of the [phone display's] LED backlight, and unwarranted wear and tear for at least both of those components." *Id.* at 5, ¶ 24. He further alleges these communications were "invasions of privacy that required [him] to divert attention away from . . . work and personal life." *Id.* at 5, ¶ 25.

Mr. Escano alleges these communications, and the resultant injuries they caused him, violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, *et seq. Id.* at 5-14, ¶ 26-62. Accordingly, Mr. Escano seeks damages in the amount of $61,500 and treble damages in the amount of $184,500, for a total of $246,000, as well as, among other things, an injunction against Defendants. *Id.* at 18.

On March 12, 2021, Liberty Mutual filed a *Notice of Removal* (the "Notice of Removal"), (Doc. 1), on the basis of federal question jurisdiction, removing this action from the Sixth Judicial District Court in Grant County to the United States District Court for the District of New Mexico. *Id.* at 2, ¶ 6. Liberty Mutual indicated in the Notice of Removal that "ForeverCar . . . has consented to this Notice of Removal[,] [but that] Concord . . . and Alon Salm[a]n have not been served [with the Summons and Complaint] as of the date of this filing." *Id.* at 3, ¶ 11. Thereafter, Concord and Mr. Salman filed a *Notice of Consent to Removal*, (Doc. 14). On April 7, 2021, Mr. Escano filed the instant Motion, contending this Court lacks jurisdiction over this case. (Doc. 11).

**II.  Legal Standard**

An action initially filed in state court may be removed to federal district court if the district court has original jurisdiction. *See* 28 U.S.C. 1441(a). Federal courts have original jurisdiction over claims arising under the U.S. Constitution or federal law, pursuant to 28 U.S.C. § 1331. *See* U.S. CONST., art. III, § 2; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

The presence of federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). In other words, the plaintiff is "the master of the claim," and thus "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* On the other hand, a plaintiff may not avoid federal jurisdiction by mere "artful pleading." *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1061 (10th Cir. 2006).

Removal statutes are strictly construed, *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), and "[a]ll doubts are to be resolved against removal," *Fajen v. Found. Reserve Ins.*, 683 F.2d 331, 333 (10th Cir. 1982) (citation omitted). The defendant seeking removal bears the burden of establishing federal court jurisdiction "by a preponderance of the evidence." *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008). "If at any time before final judgement it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

**III. Analysis**

In his Motion, Mr. Escano requests the Court remand this case back to state court. (Doc. 11 at 1). He argues this Court lacks subject matter jurisdiction over the matter for the following reasons: (1) "[T]he TCPA . . . expressly grants victims . . . the option to bring their cases in state court[,]" thus preventing defendants from then removing those cases to federal court; and (2) Mr. Escano lacks Article III standing on "a significant portion of the causes of action within this action[.]" *Id.* at 2. He further argues that Liberty Mutual failed to obtain consent from Concord and Mr. Salman to remove this matter to federal court. *Id.*

In their separate responses, both Liberty Mutual and ForeverCar contend that the TCPA "allows for concurrent federal and state jurisdiction[,]" which empowers defendants to remove such actions from state court to federal court. (Doc. 20 at 3); see

4

(Doc. 22 at 7-8). Liberty Mutual and ForeverCar further argue that Mr. Escano has Article III standing, given the concrete injuries he alleged in the Complaint, and that Concord and Mr. Salman have consented to removal. (Doc. 20 at 4-7); (Doc. 22 at 4-7, 8-10).

### A. Removability of TCPA Suits

First, Mr. Escano argues that, in enacting the TCPA, Congress granted plaintiffs the option to file suit in either state court or federal court. (Doc. 11 at 3-5). He contends, accordingly, that once a plaintiff has chosen state court as his forum, the defendant cannot then remove the case to federal court. *Id.* at 5. In response, Defendants rely on the Supreme Court's decision in *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012), which held "'that Congress did not deprive federal courts of federal-question jurisdiction over private TCPA suits []' when it allowed for concurre[nt] jurisdiction." (Doc. 20 at 3) (quoting *Mims*, 565 U.S. at 376). Defendants explain that, following the *Mims* decision, "federal courts have routinely exercised jurisdiction over TCPA cases removed from state court." *Id.* In his Reply, Mr. Escano agrees with Defendants about the holding in *Mims*, but argues the holding does not contradict his position that defendants cannot remove to federal court TCPA cases initially filed in state court. (Doc. 32 at 7-8).

The TCPA outlaws specific telemarketing practices, and it permits "person[s] or entit[ies]" aggrieved by such practices to bring private suits "in an appropriate [state court]." 47 U.S.C. § 227(b)(3). In analyzing this language in the TCPA, the Supreme Court in *Mims* held "that federal and state courts have concurrent jurisdiction over private suits arising under the TCPA." *Mims*, 565 U.S. at 372. Justice Ruth Bader Ginsberg, writing for a unanimous Court in *Mims*, further considered the very issue

5

presented by the instant Motion: whether TCPA cases filed in state court are removable to federal court. *See id.* at 385-86.

In particular, the defendants in *Mims*, who had taken the position that the TCPA grants state courts exclusive jurisdiction over TCPA cases, argued that "if plaintiffs are free to bring TCPA claims in federal court under 28 U.S.C. § 1331, then defendants sued in state court would be equally free to remove those cases to federal court under 28 U.S.C. § 1441." *Id.* at 386. The *Mims* defendants warned that "defendants could use removal as a mechanism to force small-claims-court plaintiffs to abandon suit rather than fight it out in the more expensive federal forum." *Id.* (internal quotations omitted). Justice Ginsberg rejected this "floodgate argument[,]" explaining that in the seven years since the Seventh Circuit held that the TCPA confers concurrent jurisdiction on state and federal courts, only 65 cases in the Seventh Circuit were removed from state court to federal court, and all were class actions. *Id.* at 386. Of particular relevance here, Justice Ginsberg noted in dicta that "[w]hen Congress wants to make federal claims instituted in state court nonremovable, it says just that." *Id.* at 386, n.15.

Since the *Mims* decision, neither this District, this Circuit, nor any other circuit has considered directly whether TCPA cases may be removed from state court to federal court. However, it is noteworthy that many TCPA cases have been removed from state court to courts in this District without incident. *See, e.g.*, *Childress v. DeSilva Automotive Services, LLC*, 20-cv-136 JB/JHR, 2020 WL 3572909 (D.N.M. July 1, 2020). Moreover, countless TCPA cases that were removed from state courts to federal courts on the basis of federal question jurisdiction have come before other circuits without incident. *See, e.g.*, *Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3rd Cir. 2013);

6

*Dr. Robert L. Meinders, D.C., Ltd., v. UnitedHealthcare, Inc.*, 800 F.3d 853 (7th Cir. 2015); *Golan v. Veritas Entertainment, LLC*, 788 F.3d 814 (8th Cir. 2015); *Los Angeles Lakers, Inc. v. Federal Insurance Company*, 869 F.3d 795 (9th Cir. 2017).

Most instructive are the decisions from district courts around the country, which have considered the issue and relied on Justice Ginsberg's footnote in *Mims* in concluding that defendants may remove TCPA cases from state to federal court. *See, e.g.*, *Speidel v. American Honda Finance Corp.*, 2:14-cv-19-FtM-38CM, 2014 WL 820703, at *1 (M.D. Fla. March 3, 2014) (concluding "Congress has included nothing in the TCPA that would preclude removal to federal court[,]" and quoting Justice Ginsberg's footnote); *Edmonds v. DirecTV, LLC*, 1:16-cv-1291-STA-egb, 2017 WL 1435760, at *1 (W.D. Tenn. April 21, 2017) (finding removal was proper, and explaining that "[a]lthough [Justice Ginsberg's footnote] is arguably dicta, it is entirely consistent with Sixth Circuit cases holding that a congressional grant of concurrent jurisdiction in a statute does not imply that removal is prohibited[]") (internal quotations omitted).

Given the weight of authority from other districts, as well as this District's routine exercise of jurisdiction over TCPA cases removed from state court and Justice Ginsberg's footnote in *Mims*, the Court finds that Liberty Mutual has established by a preponderance of the evidence that removal of this case from state to federal court on the basis of federal question jurisdiction was proper. *See McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008).

    **B.**    **Standing**

Next, Mr. Escano argues that he lacks standing to litigate "a significant portion" of this case in federal court. (Doc. 11 at 2). Specifically, he contends the injuries he

7

suffered from receiving robocalls and robotexts from Defendants, as alleged in the Complaint, do not satisfy the injury-in-fact requirement under Article III of the U.S. Constitution. *Id.* at 5 (citing *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019)). Defendants argue that Mr. Escano does have standing, distinguishing this case, in which Mr. Escano alleges he received twenty-two robotexts and thirteen robocalls, from *Salcedo*, in which the plaintiff had received no robocalls and only one robotext. (Doc. 20 at 4); *see also* (Doc. 22 at 5-7).

The U.S. Constitution grants the federal courts jurisdiction only over "'cases' and 'controversies[,]'" of which standing is an essential part. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting U.S. CONST., art. III, § 2); *see also Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019). Article III standing requires a plaintiff to show "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision." *Kane Cnty. Utah v. United States*, 928 F.3d 877, 888 (10th Cir. 2019).

The issue this Court must consider is whether twenty-two robotexts and thirteen robocalls amount to injury in fact. (Doc. 1-1 at 5, ¶¶ 22-25). The Tenth Circuit has not addressed this issue directly, but other circuits have. Mr. Escano relies on the Eleventh Circuit's decision in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), to support his argument that the thirty-five communications sent by Defendants do not amount to a concrete injury in fact. *See* (Doc. 32 at 9-11).

In *Salcedo*, the Eleventh Circuit addressed whether a plaintiff, who received a single, unsolicited text message in violation of the TCPA, alleged an injury in fact

sufficient to confer standing on the plaintiff. *Salcedo*, 936 F.3d at 1165. The Court determined that the plaintiff did not show a concrete injury which could support standing, but rather that he alleged only a waste of time generally. *Id.* at 1167. The Court explained as follows:

> [The plaintiff] has not alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone. Nor has he alleged that his cell phone was searched, dispossessed, or seized for any length of time. [The plaintiff's] allegations of a brief, inconsequential annoyance are categorically distinct from those kinds of real but intangible harms. The chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly [waved] in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts.

*Id.* at 1172. The Court further explained that "[t]here is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be." *Id.*

The instant case is distinguishable from *Salcedo* both factually and legally. First, Mr. Escano alleges Defendants transmitted not one robotext but rather twenty-two, as well as thirteen robocalls. (Doc. 1-1 at 3, ¶ 14). He also alleges much more than Defendants' conduct merely wasted his time, as was the plaintiff's allegation in *Salcedo*; Mr. Escano alleges that, over the relevant twelve-month period, he suffered "partial depletion of the charge of [his] cell phone's battery, a partial depletion of the lifespan of the [phone display's] LED backlight, . . . unwarranted wear and tear for at least both of those components[,]" and an "invasion [of his] privacy." *Id.* at 5, ¶¶ 22-25.

Second, even had Defendants sent Mr. Escano only one robotext, that would not necessarily deprive Mr. Escano of standing to litigate his TCPA claims here. As the Eleventh Circuit stated in *Salcedo*, there is no minimum number of text messages or

9

telephone communications required to show a concrete injury for standing purposes. *See Salcedo*, 936 F.3d at 1172. In fact, the Seventh Circuit recently joined the Second and the Ninth Circuits to hold that receipt of a single text message *is* sufficient to confer standing on a TCPA plaintiff. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461-63 (7th Cir. 2020); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92-95 (2d Cir. 2019); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

Mr. Escano has indeed alleged a concrete injury. Specifically, he alleges that he suffered "partial depletion of the charge of [his] cell phone's battery, a partial depletion of the lifespan of the [phone display's] LED backlight, and unwarranted wear and tear for at least both of those components." (Doc. 1-1 at 5, ¶¶ 22-24); *see, e.g.*, *Perishcetti v. T-Mobile USA, Inc.*, 479 F.Supp.3d 1333, 1337 (N.D. Ga. 2020) (finding sufficient injury to support standing where "plaintiff alleged that he was harmed because the [four] text messages occupied the capacity of [his] cellular telephone and depleted the battery of [his] cellular phone") (internal quotations omitted).

Further, Mr. Escano alleges in the Complaint that the thirty-five communications from Defendants "inva[ded] [his] privacy" and "required [him] to divert attention away from [his] work and personal life to tend to and answer such unwarranted intrusions into [his] life." *Id.* at 5, ¶ 25. This particular harm—invasion of one's privacy—is the type of harm Congress enacted the TCPA to combat. *See LaVigne v. First Community Bancshares, Inc.*, 215 F.Supp.3d 1138, 1144 (D.N.M. 2016) ("[A]n invasion of [residential] privacy can be considered a concrete harm—a harm that actually exists— and is sufficient to confer standing on an individual who is suing to protect that interest.") (internal quotation marks omitted) (citing *Maryland v. Universal Elections,*

*Inc.*, 729 F.3d 370, 376-77 (4th Cir. 2013)); *see also Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) (finding three robotexts amounted to "a cognizable injury in fact: nuisance arising out of an unsolicited text advertisement"). That harm is made all the worse when, as Mr. Escano alleges, the person's time is wasted by answering and otherwise responding to the communications. (Doc. 1-1 at 3, ¶ 25).

Had Mr. Escano alleged only that Defendants' communications wasted his time, this Court might have been more persuaded by *Eldridge v. Pet Supermarket, Inc.*, 446 F.Supp.3d 1063 (S.D. Fla. 2020), a decision Mr. Escano asks this Court to follow. (Doc. 32 at 11). However, this Court is considering far greater injuries alleged by Mr. Escano than the injuries the court considered in *Eldridge*. *See Eldridge*, 446 F.Supp.3d at 1070-72 (finding, in the context of a factual attack on the complaint, that plaintiff's alleged harms of battery depletion and data consumption failed for lack of evidence, leaving only the allegation of wasted time). For that reason, as well as the reasons above, Mr. Escano, unlike the plaintiff in *Eldridge*, has established a concrete harm, which the Court finds satisfies Article III's injury in fact requirement. Therefore, the Court finds that Mr. Escano has standing to litigate his TCPA claims in this Court.

### C. Consent to Removal

Finally, Mr. Escano asks the Court to remand this case as improperly removed by Liberty Mutual, because Concord and Mr. Salman failed to consent to removal. (Doc. 11 at 7-8). Liberty Mutual contends that removal was proper because consent is not required of non-removing defendants who have not yet been served by the plaintiff. (Doc. 20 at 6-7). Liberty Mutual further argues that Mr. Escano failed to file proof that he had served Concord and Mr. Salman, and thus Liberty Mutual was unaware of whether

Concord and Mr. Salman had been served. *Id.* Liberty Mutual explains, in any event, that all Defendants have since consented to removal of this case. *Id.* at 7. In Reply, Mr. Escano disputes Liberty Mutual's contention that it was unaware of whether Concord and Mr. Salman had been served, alleging that he communicated by telephone and email with counsel for Liberty Mutual on the same day Liberty Mutual filed the *Notice of Removal*. (Doc. 32 at 12).

To remove a case to federal court, a defendant must file the notice of removal "within thirty days after receipt by the defendant of a copy of a pleading or other paper from which it may first be ascertained that the case is one which is removable." *Zambrano v. N.M. Corr. Dep't*, 256 F.Supp.3d 1179, 1181 (D.N.M. 2017) (citing 28 U.S.C. § 1446(b)(1)). When the plaintiff names and serves multiple defendants, all defendants "must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). A plaintiff may move to remand the case on the basis of a defect in the removal process, including a failure of all defendants to consent to removal. *Padilla v. Am. Modern Home Ins. Co.*, 282 F.Supp.3d 1234, 1251, 1254-55 (D.N.M. 2017).

Liberty Mutual timely removed this action on March 12, 2021, exactly thirty days after they were served with Mr. Escano's state court Complaint. *See* (Doc. 1 at 1-2); (Doc. 32 at 11); *see also* 28 U.S.C. § 1446(b)(1). Liberty Mutual obtained consent to its removal of this action from Forever Car at that time, but indicated in the *Notice of Removal* that "[t]o the best of . . . Liberty [Mutual's] knowledge, Defendant Concord . . . and Alon Salm[a]n have not been served as of the date of this filing." (Doc. 1 at 3). Mr. Escano's contention that, on March 16, 2021, he informed counsel for Liberty Mutual that he had in fact successfully served Concord and Mr. Salman does not contradict

Liberty Mutual's statement four days prior in the *Notice of Removal* that those Defendants had not yet been served. *See* (Doc. 32-1 at 3, ¶ 8). The Court can find nothing in the record, such as proof of service in state court, indicating Liberty Mutual knew these Defendants had been served prior to removal. In other words, the Court has no reason to doubt that, at the time of removal, Liberty Mutual believed Concord and Mr. Salman had not yet been served.

In any event, on April 13, 2021, Concord and Mr. Salman filed a notice, consenting to removal. (Doc. 14). With that, all Defendants were unanimous in their consent to removal. And, in the end, "the question is not whether the removing defendant did everything it could to obtain consent, but whether all properly-served defendants consent to removal. If all defendants consent, then courts have been willing to forgive minor procedural defects, especially when the procedural defect was not the fault of the removing defendant." *Romero v. Knee*, 1:17-cv-1273 RB/KBM, 2018 WL 3966275, at *3 (D.N.M. Aug. 17, 2018); *see also Branch v. Attorney for You*, 1:15-cv-1087 RAJ, 2016 WL 7437140, at *2 (D.N.M. Feb. 11, 2016) (holding that remand was not required when the removing defendant omitted another properly-served defendant from the notice of removal because he did not know the omitted defendant had been served, *and the omitted defendant later consented to removal*).

Mr. Escano complains that Concord and Mr. Salman docketed their consent thirty-one days after removal and six days after he had already moved for remand, but "the removal statute is silent regarding when consent must take place." *Weathers v. Circle K Stores, Inc.*, 434 F.Supp.3d 1195, 1204 (D.N.M. 2020). Thus, the Court finds that this delay does not merit remand on procedural grounds. *See Couzens v. Donohue*,

854 F.3d 508, 515 (8th Cir. 2017) (stating that it was "reluctan[t] to apply the unanimity requirement in a hypertechnical and unrealistic manner," where the non-removing defendant filed a consent to removal thirty-one days after the case was removed and one day after plaintiff moved to remand).

The Court therefore finds that remand would be improper here since it appears that Liberty Mutual was unaware that Concord and Mr. Salman had been served prior to removal of this action, and all Defendants have consented to the removal.

### IV. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff Ruben Escano's *Motion to Remand to State Court*, (Doc. 11), be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE