## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RUBEN ESCANO,

       Plaintiffs,

v.                                                CV No. 21-223 MV/CG

CONCORD AUTO PROTECT, INC., et al.,

       Defendants.

### **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on three sets of briefing:

(1) the *Motion to Dismiss* (the "Motion to Dismiss"), (Doc. 19), filed by Defendants Liberty Mutual Group, Inc. and Liberty Mutual Auto and Home Services, LLC (collectively, "Liberty Mutual") on April 20, 2021; Plaintiff Ruben Escano's *Reply in Opposition to Motion to Dismiss*, (Doc. 26), filed May 18, 2021; Liberty Mutual's *Reply Brief in Support of the Liberty Defendants' Motion to Dismiss*, (Doc. 34), filed June 1, 2021; and Liberty Mutual's *Notice of Completion of Briefing*, (Doc. 35), filed June 1, 2021.

(2) The *Motion for Judgment on the Pleadings* (the "Motion for Judgment on the Pleadings"), (Doc. 30), filed by Defendant ForeverCar, LLC ("ForeverCar") on May 21, 2021; ForeverCar's *Declaration of Andrew L. Van Houter in Support of Defendant ForeverCar, LLC's Motion for Judgment on the Pleadings*, (Doc. 31), filed May 21, 2021; Mr. Escano's *Response in Opposition to Defendant ForeverCar, LLC's Motion for Judgment on the Pleadings*, (Doc. 37), filed June 4, 2021; ForeverCar's *Reply Memorandum of Law in Support of its Motion for Judgment on the Pleadings*, (Doc. 41),

filed June 18, 2021; and ForeverCar's *Notice of Completion of Defendant ForeverCar, LLC's Motion for Judgment on the Pleadings*, (Doc. 42), filed June 18, 2021.

(3) Mr. Escano's *Motion for Leave to File a Motion to Strike* (the "Motion for Leave"), (Doc. 43), filed June 21, 2021; ForeverCar's *Response in Opposition to Plaintiff's Motion for Leave to File a Motion to Strike ForeverCar's Third Affirmative Defense*, (Doc. 54), filed July 13, 2021; Mr. Escano's *Reply Memorandum of Law in Support of His Motion for Leave to File a Motion to Strike ForeverCar's Third Affirmative Defense*, (Doc. 56), filed July 27, 2021; and Mr. Escano's *Notice of Completion of Plaintiff Ruben J. Escano's Motion for Leave to File a Motion to Strike ForeverCar's Third Affirmative Defense*, (Doc. 57), filed July 28, 2021.

On August 16, 2021, United States District Judge Martha Vazquez referred this matter to the undersigned to perform legal analysis and recommend an ultimate disposition, pursuant to 28 U.S.C. § 636(b). (Doc. 72). The Court, having considered the parties' briefing, the record, and the relevant law, **RECOMMENDS** that Liberty Mutual's *Motion to Dismiss*, (Doc. 19), be **GRANTED WITHOUT PREJUDICE**; ForeverCar's *Motion for Judgment on the Pleadings*, (Doc. 30), be **GRANTED WITH PREJUDICE**; and Mr. Escano's *Motion for Leave to File a Motion to Strike*, (Doc. 43), be **DENIED AS MOOT**.

## I.    Factual & Procedural Background

This lawsuit suit stems from a series of telemarketing robocalls and robotexts Mr. Escano received on his cell phone offering vehicle service contracts. *See generally* (Doc. 1-1 at 1-18); *see also* (Doc. 26 at 1, n.1). Mr. Escano alleges that, between February 20, 2020, and February 5, 2021, Defendant Concord Auto Protect, Inc.

("Concord") and Defendant Alon Salman, "operat[ing] on behalf of and under the direct, implied, or apparent direction of . . . Liberty, . . . transmit[ted]" the twenty-three text messages in question. *Id.* at ¶ 22. He alleges that, during the same period, ForeverCar, "operat[ing] on behalf of and with the direct, implied, or apparent direction of . . . Liberty, . . . transmit[ted] the at least thirteen calls in question." *Id.* at ¶ 22. Mr. Escano alleges that Defendants transmitted these communications by use of an automatic telephone dialing system ("ATDS"). *See id.* at ¶¶ 27-62.

As a result, Mr. Escano filed this Telephone Consumer Protection Act ("TCPA") case, proceeding *pro se*, on February 10, 2021, in the Sixth Judicial District in Grant County, New Mexico. *See* (Doc. 1-1 at 1-18). In the Complaint, Mr. Escano alleges that the robocalls and robotexts violated the TCPA, 47 U.S.C. § 227, *et seq.* (Doc. 1-1 at ¶¶ 27-62). He contends that ForeverCar, Concord, and Mr. Salman are directly liable for the transmissions, and that Liberty Mutual is either directly or vicariously liable. *Id.* at ¶¶ 63, 65, 67, 68. For these alleged violations of the TCPA, Mr. Escano seeks $61,500 in statutory damages, trebled to $184,500. *Id.* at 18.

On March 12, 2021, Liberty Mutual removed this action to the United States District Court for the District of New Mexico. (Doc. 1). On April 20, 2021, ForeverCar filed its Answer, (Doc. 17), and Liberty Mutual filed a responsive pleading in the form of the instant Motion to Dismiss, (Doc. 19). The two other Defendants, Concord and Mr. Salman, have not filed responsive pleadings. Thus, on August 6, 2021, the Clerk of the Court entered default against Concord and Mr. Salman, but the Court ultimately denied without prejudice Mr. Escano's request for a default judgment. *See* (Doc. 62); (Doc. 71

3

at 1-2); *see also* (Doc. 67 at 11-12). To date, Mr. Escano has not refiled a motion for default judgment against these two Defendants.

Before the Court now is Liberty Mutual's responsive pleading—the Motion to Dismiss—as well as ForeverCar's Motion for Judgment on the Pleadings, and Mr. Escano's Motion to Strike. The Court will consider each motion in turn.

## II.   ForeverCar's Motion for Judgment on the Pleadings

In its Motion for Judgment on the Pleadings, ForeverCar contends Mr. Escano has failed to sufficiently allege facts "showing that ForeverCar made any of the thirteen telephone calls" of which Mr. Escano complains. (Doc. 30 at 1). ForeverCar argues that the Complaint fails to connect the thirteen different phone numbers to ForeverCar, and, in fact, that the Complaint alleges the callers identified "entities *other than* ForeverCar[.]" *Id.* at 2-3 (emphasis in original). Further, ForeverCar argues that Mr. Escano's "only basis for alleging that ForeverCar actually made the calls . . . is that a ForeverCar webpage offered Liberty Mutual customers a discount on ForeverCar's products[,]" and thus by that association, the January 19, 2021 caller who identified himself as a Liberty Mutual employee was truly a ForeverCar employee. *Id.* at 2.

In his response, Mr. Escano maintains that ForeverCar placed the thirteen phone calls. (Doc. 37 at 3). As a specific example, he contends that the phone representative who identified himself as a Liberty Mutual employee during the January 19, 2021 call offered "Platinum" and "Platinum Plus" vehicle service plans, but that Liberty Mutual does not sell vehicle service plans directly to consumers. *Id.* at 4. Rather, "[t]he only company that the Liberty Defendants partner with to sell their [vehicle service plans] is ForeverCar[,] [a]nd the two kinds of [vehicle service plans] that ForeverCar offers are

4

called 'Platinum' and 'Platinum Plus.'" *Id.* From this, Mr. Escano draws the conclusion
that "the phone representative [Mr. Escano] spoke with was a ForeverCar employee."
*Id.*

### A.   Motion for Judgment on the Pleadings Standard

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for
judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to
delay trial[.]" A motion for judgment on the pleadings under Rule 12(c) is generally
treated like a motion to dismiss under Rule 12(b)(6), except that claims dismissed under
12(c) are dismissed with prejudice. *Pena*, 110 F. Supp. 3d at 1113. Accordingly, a court
reviewing a motion for judgment on the pleadings must "accept all facts pleaded by the
non-moving party as true and grant all reasonable inferences from the pleadings in
favor of the same." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012)
(internal citation omitted).

"For a party to survive a motion for judgment on the pleadings, a complaint must
contain sufficient facts to state a claim [for] relief that is plausible on its face." *Lexon Ins.
Co. v. Coop. Educ. Servs.*, 1:20-cv-205 JCH/JFR, 2021 WL 1145160, at *1 (D.N.M.
March 25, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A complaint that
offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of
action" is insufficient to state a claim for relief. *Lexon Ins. Co.*, 2021 WL 1145160, at *1
(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege
either direct or inferential allegations on all the material elements of a claim and provide
enough factual allegations for a court to infer the claim is plausible. *Lexon Ins. Co.*,

2021 WL 1145160, at *1 (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### B.   ForeverCar's Liability for the Thirteen Telemarketing Calls

Mr. Escano alleges in his Complaint that ForeverCar placed thirteen telemarketing calls from various different phone numbers to his cell phone between May 13, 2020, and January 26, 2021, which violated Sections 227(b) and 227(c) of the TCPA. *See* (Doc. 1-1 at ¶¶ 28, 34, 43, 45, 47, 49, 51, 53, 56-58, 60-61); *see also* (Doc. 1-1 at 18). Section 227(b) forbids autodialed (or ATDS) calls to a cellular phone without prior consent of the called party, whereas Section 227(c) prohibits calls to any subscriber on the do-not-call registry. *Shelton v. Fast Advance Funding, LLC*, 805 Fed. App'x 156, 157 (3d Cir. 2020); *see also* 47 U.S.C. §§ 227(b)(1), (c)(3)(F).

To state a claim under Section 227(b) of the TCPA, "a plaintiff must allege that (1) the defendant made a telephone call (2) to the plaintiff's cellular phone (3) using 'any automated telephone dialing system or an artificial prerecorded voice[.]'" *Mestas v. CHW Group Inc.*, 508 F. Supp. 3d 1011, 1022 (D.N.M. 2020) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). To state such a claim under Section 227(c), a plaintiff must allege the defendant "made more than one telephone solicitation to him in a 12-month period while his number was on the Do Not Call registry." *Valdes v. Nationwide Real Estate Executives, Inc.*, 20-cv-1734 DOC/JDEx, 2021 WL 2134159, at *4 (C.D.C.A. April 22, 2021); *see also* 47 § U.S.C. 227(c)(5).

Here, as ForeverCar contends, the Complaint fails at the very first element of Sections 227(b) and 227(c)—that it was ForeverCar who made the telemarketing calls. With each of the thirteen calls Mr. Escano attributes to ForeverCar, the Complaint alleges ForeverCar or its agents called Mr. Escano's cell phone from a phone number

6

"us[ing] an ATDS, or effectively similar equipment," and, in all but one of the calls, did so "with an artificial or prerecorded message." (Doc. 1-1 at ¶¶ 28, 43, 45, 47, 49, 51, 53, 56-58, 60-61); *but see id.* at ¶ 34. However, the Complaint concedes that, in each of these calls, the phone representative or automated message "stated neither the true name of its company nor a callback number in the message." *Id.* at ¶¶ 28, 43, 45, 47, 49, 51, 53, 56-58, 60-61. Rather, as the Complaint states, "[m]any of the calls began with an artificial or prerecorded message, announcing the calls with fictious company names such as, 'Hi this is Jennifer with Auto Health Services,' or 'Thank you for calling Auto Warranty Services!' . . . [O]thers purported to be from government agencies[.]" *Id.* at ¶ 15. These allegations alone do not establish that ForeverCar made the thirteen phone calls at issue.

Despite this, Mr. Escano's insists that the Court can infer from other facts concerning the nature of ForeverCar's business and its relationship with Liberty Mutual that ForeverCar made the thirteen calls. That is, he asks the Court to draw this inference because (1) the January 19, 2021 caller who identified himself as a Liberty Mutual employee was offering vehicle service contracts, (2) the caller was specifically offering Platinum and Platinum Plus plans, (3) Liberty Mutual does not offer vehicle service plans directly to consumers, (4) ForeverCar *does* offer vehicle service plans and, particularly, the Platinum and Platinum Plus plans, and (5) ForeverCar is the only company who sells vehicle service plans to Liberty Mutual.

The problem, however, is that Mr. Escano fails to allege any of these contextual facts in his Complaint, but rather offers them only in his response to the Motion for

Judgment on the Pleadings.[1] *See Lexon Ins. Co.*, 2021 WL 1145160, at *1 ("For a party to survive a motion for judgment on the pleadings, a complaint must contain sufficient facts to state a claim to relief that is plausible on its face."); *see also*, *e.g.*, *Barker v. Sunrun Inc.*, 1:18-cv-855 KG/LF, 2019 WL 1983291 (D.N.M. Aug. 29, 2019) (finding plaintiff failed to sufficiently allege that defendant was connected to the subject telemarketing calls where plaintiff alleged such facts in response to a motion to dismiss instead of the complaint). The closest Mr. Escano comes in the Complaint to alleging these contextual facts is his statement that ForeverCar is in the business of telemarketing and his statement that ForeverCar and Liberty Mutual operate together to sell vehicle service plans. (Doc. 1-1 at ¶¶ 67, 70). These allegations thus fall short of stating that ForeverCar made the thirteen telemarketing calls, and thus the Court will recommend that ForeverCar be dismissed from this matter with prejudice. *See Pena*, 110 F. Supp. 3d at 1113 (stating that claims dismissed under 12(c) are dismissed with prejudice); *see also*, *e.g.*, *Cheslek v. Chase Bank*, 1:15-cv-348 JB/WPL, 2016 WL 3148398 (May 19, 2016) (dismissing *pro se* plaintiff's claims with prejudice under Rule 12(c)) because defendant "has clearly established that no material issue of fact [alleged in the complaint] remains to be resolved" and thus defendant was "entitled to judgment as a matter of law").

---

[1] ForeverCar cites several relevant TCPA cases from this District, which Mr. Escano distinguishes from his case. *See* (Doc. 30 at 7-9); (Doc. 37 at 6-8); (Doc. 41 at 3-4). However, Mr. Escano draws his distinctions from the incorrect premise that he has alleged these contextual facts in his Complaint. He has not. As explained herein, he alleged these facts and made these arguments only in his response to the Motion for Judgment on the pleadings. As such, Mr. Escano's very basis for distinguishing these cases is incorrect, and thus the Court will not address the cases.

Therefore, the Court finds Mr. Escano has failed to state a claim that ForeverCar violated Sections 227(b) and 227(c) of the TCPA. Thus, the Court will **RECOMMEND** that ForeverCar's Motion for Judgment on the Pleadings be **GRANTED WITH PREJUDICE**.

### III.    Liberty's Motion to Dismiss

Turning to the Motion to Dismiss, Liberty Mutual asks the Court to dismiss Mr. Escano's Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a cause of action. (Doc. 19 at 5). Namely, Liberty Mutual contends the Complaint fails to sufficiently allege facts that would make Liberty Mutual either directly or vicariously liable under the TCPA. *Id.* at 5-13.

Mr. Escano argues that the Complaint does state a claim against Liberty Mutual under the TCPA and, in relevant part, Liberty Mutual's vicarious liability for the violations. (Doc. 26 at 3-10). In support of his claim that Liberty Mutual directed ForeverCar and Concord to transmit the communications, Mr. Escano references Liberty Mutual's use of ForeverCar to sell vehicle service contracts, the January 19, 2021 robocall in which a representative identified himself as "working for Liberty Mutual," and several common characteristics between all of the robocalls and robotexts. *Id.* at 3-7.

Liberty Mutual disputes that a contractual relationship with ForeverCar and Concord is enough to hold it vicariously liable for the actions of Concord, Mr. Salman, and ForeverCar. (Doc. 34 at 3). Liberty Mutual argues that, to be held vicariously liable for the actions of another, a principal must control and direct the actions of the agent. *Id.* Liberty Mutual also notes that Mr. Escano's arguments rely mostly on exhibits attached

to his response to the Motion to Dismiss rather than allegations in his Complaint. *Id.* at 4.

A.    <u>**Motion to Dismiss Standard**</u>

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, as stated above, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the complaint need not recite "detailed factual allegations, . . . the factual allegations must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 679. That is, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009).

**B.    Liberty Mutual's Liability for the Robocalls and Robotexts**

As with ForeverCar above, Mr. Escano alleges in his Complaint that Liberty Mutual violated Sections 227(b) and 227(c) of the TCPA. (Doc. 1-1 at ¶ 68). However, Mr. Escano alleges that Liberty Mutual violated these sections of the TCPA "vicariously or directly." *Id.* Indeed, a caller can be held either directly or vicariously liable for violating Sections 227(b) and 227(c) of the TCPA. *See Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1226 (D.N.M. 2019).

With regard to Mr. Escano's claim of direct liability, there was some confusion among the parties. In paragraph 69 of the Complaint, he alleges that Liberty mutual directly made the January 19, 2021 robocall. (Doc. 1-1 at ¶ 69). Paragraph 60, on the other hand, alleges that it was ForeverCar who made the January 19, 2021 call. *Id.* at ¶ 60. In its reply, Liberty notes the same incongruity, contending that these two paragraphs "contradict each other." (Doc. 34 at 3, n.5). Mr. Escano clarifies the issue in his response, explaining that "the phone representative [with whom Mr. Escano spoke during the call] was a ForeverCar agent selling the Liberty Defendants' [vehicle service contracts] as part of their partnership." (Doc. 26 at 5).

As such, the Court reads the Complaint to allege only vicarious liability regarding Liberty Mutual. *See St. Paul Fire and Marine Ins. Co. v. Sedona Contracting, Inc.*, 2:20-cv-79 WJ/CG, 2020 WL 7126590, at *6 (D.N.M. Dec. 4, 2020) (resolving factual ambiguities in the complaint in favor of the nonmovant). In other words, the Complaint does not allege that Liberty Mutual is directly liable for the January 19, 2021 call, or for any of the other robocalls or robotexts. Therefore, the Complaint fails to state a claim against Liberty for direct liability under Sections 227(b) or 227(c) of the TCPA.

Mr. Escano's vicarious liability claims extend to the thirteen robocalls he alleges ForeverCar made as well as the twenty-three robotexts he alleges Concord and Mr. Salman transmitted. The FCC has interpreted Section 227 of the TCPA to impose vicarious liability on a defendant "pursuant to 'federal common law agency principles.'" *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1227 (D.N.M. 2019) (quoting *Dish Network, LLC*, FCC 13-54, 6574, ¶ 33, at 6586). "Courts have similarly held that '[a] defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it.'" *Mestas*, 508 F. Supp. 3d at 1023 (quoting *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018)). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Childress v. Liberty Mutual Ins. Co.*, 1:17-cv-1051 MV/KBM, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (quoting *Melito v. Am. Eagle Outfitters, Inc.*, 14-cv-2440, 2015 WL 7736547, at *6 (S.D.N.Y. Nov. 30, 2015); Restatement (Third) of Agency, § 1.01 (2006)). "[T]o plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiff[] must allege *some* facts regarding the relationship between an alleged principal and agent . . . and cannot simply allege general control in a vacuum." *Childress*, 2018 WL 4684209, at *3 (quoting *Melito*, 2015 WL 7736547, at *7) (emphasis in original).

Mr. Escano's Complaint contains specific factual allegations regarding the relationship between Liberty Mutual and ForeverCar, and those allegations establish an obvious relationship between the companies. Mr. Escano alleges, for instance, that

during one of the thirteen phone calls placed by ForeverCar (the January 19, 2021 call), the "telephone agent said the company he was calling from was Liberty Mutual and that he works for Liberty Mutual." (Doc. 1-1 at 16, ¶ 69). He also alleges, among other things, that ForeverCar's website holds Liberty Mutual out as a partner in its vehicle service plans program. *Id.* at 17, ¶ 70. In support of this allegation, Mr. Escano notes "the trademark of Liberty Mutual in the top-left of the website's header" and the representation on the webpage that "[a] vehicle service plan from Liberty Mutual powered by ForeverCar is an affordable way to protect yourself from the hassles of car repair." *Id.*

However, the Court need not consider whether the relationship between Liberty Mutual and ForeverCar amounted to one of agent-principal, because, as explained above, the Complaint fails to state a claim against ForeverCar for direct liability. Put differently, even if ForeverCar were acting as Liberty Mutual's agent, Liberty Mutual cannot be held vicariously liable for ForeverCar's violations of the TCPA because the Complaint fails to state, as a threshold, that ForeverCar violated the TCPA. Accordingly, the Complaint fails to state a claim of vicarious liability against Liberty Mutual for the thirteen robocalls.

The Complaint suffers the exact opposite infirmity where Liberty Mutual's vicarious liability for the twenty-three text messages is concerned. That is, the Complaint appears to sufficiently allege that Concord (and Mr. Salman acting as its registered agent) transmitted the text messages. (Doc. 1-1 at 15, ¶¶ 2, 64, 66). The Complaint states, in relevant part, that "[a]ll of the text messages alleged supra, with the exception of the February 20, 2020 message, contained the words 'Concord Auto

13

Protect,' in combination with phrases and characters such as, 'Concord Auto Protect-Sale-10 Months Free+ $0.00 Deductible+Tire&Rims.'" *Id.* at ¶ 64.

However, the Complaint fails to allege any relationship at all between these Defendants and Liberty Mutual. Rather, it makes only the conclusory statement that "Concord . . . ForeverCar . . . and Liberty Mutual . . . and/or their agents placed, and/or directed the placement of[] at least thirty-five automatically-dialed and unsolicited communications to [Mr. Escano's] cellular telephone regarding extended vehicle warranties or vehicle service plans." *Id.* at ¶ 14. This is insufficient to establish an agency relationship between Liberty Mutual, as the principal, and Concord and Mr. Salman, as the agents. *See*, *e.g.*, *Childress v. Liberty Mutual Ins. Co.*, 1:17-cv-1051 MV/KBM, 2018 WL 4684209 (D.N.M. Sept. 28, 2018) (finding no vicarious liability where *pro se* complaint failed to allege any facts regarding the relationship between the caller and the defendant, and instead offered conclusory allegations).

Mr. Escano raises post-hoc allegations in his response to the Motion to Dismiss, which the Court finds similarly unavailing. He alleges that the text messages attempted to sell vehicle service plans, that the text messages were transmitted during the same timeframe the phone calls were made, and that the text messages continued after Concord and Mr. Salman were asked to stop but then ceased only after Liberty Mutual was served with the Complaint. (Doc. 26 at 10). Mr. Escano now contends these facts establish an agency relationship between these parties; he failed, however, to allege these facts in the Complaint. *See Mobley*, 40 F.3d at 340 ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the

complaint.") For that reason, the Court finds that the Complaint fails to state a claim of vicarious liability against Liberty Mutual for the twenty-three text messages.

Therefore, the Court finds Mr. Escano has failed to state a claim that Liberty Mutual either directly or vicariously violated Sections 227(b) and 227(c) of the TCPA. Thus, the Court will **RECOMMEND** that Liberty Mutual's Motion to Dismiss be **GRANTED WITHOUT PREJUDICE**.

## IV.   Mr. Escano's Motion for Leave

Finally, in his Motion for Leave, Mr. Escano seeks leave to file a motion to strike paragraph three of the affirmative defenses ForeverCar raises in its Answer. (Doc. 43 at 1). In particular, Mr. Escano contends that paragraph three is, in fact, a counterclaim "concealed merely as an affirmative defense," and for that reason it should be stricken. He explains that he seeks leave of the Court because, given the rapid succession of motions initially filed by Defendants, he ran out of time to timely file a motion to strike ForeverCar's Answer. *Id.* at 1-2. Indeed, Mr. Escano was untimely with his filing of the instant Motion for Leave. Rule 12(f) of the Federal Rules of Civil Procedure requires a party seeking to strike a pleading to file such a motion "within 21 days after being served with the pleading." Mr. Escano filed his Motion for Leave approximately one month after the deadline to file a motion to strike.

Given the Court's foregoing finding that Mr. Escano has failed to state a claim against ForeverCar, and the Court's recommendation that ForeverCar be dismissed from this case with prejudice, the Court finds that Mr. Escano's Motion for Leave is moot. Thus, the Court will **RECOMMEND** that the Motion for Leave be **DENIED AS MOOT**.

15

## V.   Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Liberty Mutual's

*Motion to Dismiss*, (Doc. 19), be **GRANTED WITHOUT PREJUDICE**; ForeverCar's

*Motion for Judgment on the Pleadings*, (Doc. 30), be **GRANTED WITH PREJUDICE**;

and Mr. Escano's *Motion for Leave to File a Motion to Strike*, (Doc. 43), be **DENIED AS**

**MOOT**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE