IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBEN ESCANO,

    Plaintiff,

v.                                                                                                        CV No. 21-223 MV/CG

CONCORD AUTO PROTECT, INC., et al.,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff Ruben Escano's *Motion to Amend Original Complaint* (the "Motion to Amend"), (Doc. 89), filed February 24, 2022; the *Opposition to Plaintiff Ruben Escano's Motion to Amend Original Complaint*, (Doc. 94), filed April 4, 2022, by Defendants Liberty Mutual Group, Inc. and Liberty Mutual Auto and Home Services, LLC (collectively, "Liberty Mutual"); the *Opposition to Plaintiff's Motion to Amend Original Complaint*, (Doc. 95), filed April 4, 2022, by Defendant ForeverCar, LLC ("ForeverCar"); Mr. Escano's *Reply in Support of the Motion to Amend Original Complaint*, (Doc. 98), filed April 18, 2022; and Mr. Escano's *Notice of Completion on Plaintiff's Motion to Amend Original Complaint*, (Doc. 99), filed April 18, 2022.

On August 16, 2021, United States District Judge Martha Vazquez referred this matter to the undersigned to perform legal analysis and recommend an ultimate disposition, pursuant to 28 U.S.C. § 636(b). (Doc. 72). The Court, having considered the parties' briefing, the record, and the relevant law, **RECOMMENDS** that Mr. Escano's Motion to Amend be **DENIED**, and that this matter be **DISMISSED WITH PREJUDICE**.

**I.      Background**

Mr. Escano first filed his *pro se* complaint (the "Original Complaint") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* in state court on February 10, 2021. *See* (Doc. 1-1 at 1-18). In the Original Complaint, he alleged that he had received thirteen telemarketing phone calls and twenty-three telemarketing text messages from Defendants over the course of a year, offering vehicle service contracts. *Id.* at ¶¶ 22, 27-62.

In particular, the Original Complaint alleged that, between February 20, 2020, and February 5, 2021, ForeverCar, "operat[ing] on behalf of and with the direct, implied, or apparent direction of . . . Liberty, . . . transmit[ted] the at least thirteen calls in question." *Id.* at ¶ 22. The Original Complaint alleged that, during the same period, Defendant Concord Auto Protect, Inc. ("Concord") and Defendant Alon Salman, "operat[ing] on behalf of and under the direct, implied, or apparent direction of . . . Liberty, . . . transmit[ted]" the twenty-three text messages in question. *Id.* at ¶ 22. The Original Complaint alleged that Defendants transmitted these communications by use of an automatic telephone dialing system ("ATDS"). *See id.* at ¶¶ 27-62.

On January 19, 2022, the undersigned issued *Proposed Findings and Recommended Disposition*, (Doc. 80), recommending that Mr. Escano's claims against ForeverCar be dismissed with prejudice and his claims against Liberty Mutual be dismissed without prejudice. Indeed, on March 3, 2022, the Court issued an order dismissing Mr. Escano's claims against ForeverCar and Liberty Mutual, but the Court did so without prejudice. (Doc. 91 at 11). In its order, the Court also acknowledged that Mr. Escano had filed the instant Motion to Amend in the interim, and indicated, given

that, it would "not enter a final judgment disposing of this case" until the Motion to Amend had been resolved. *Id.*

Now, in his Motion to Amend, Mr. Escano seeks to file the attached proposed *First Amended Complaint* (the "Proposed Amended Complaint"), (Doc. 89-1), in order to cure the deficiencies in his Original Complaint. *See* (Doc. 89). The Proposed Amended Complaint includes additional allegations, "add[s] state law claims under the New Mexico Unfair Practices Act and common law claims under the theory of trespass to chattels," "removes Mr. Salman as a defendant[,]" and deletes one of the thirteen text messages originally alleged. *Id.* at 4.

## II.  Legal Standard

A plaintiff who seeks to amend his complaint more than twenty-one days after service must obtain either written consent from the opposing parties or leave of the court. FED. R. CIV. P. 15(a)(1)-(2). "Courts are supposed to give leave to amend 'freely . . . when justice so requires.'" *Warnick v. Cooley*, 895 F.3d 746, 754 (10th Cir. 2018) (quoting FED. R. CIV. P. 15(a)(2)). After all, "Rule 15(a)'s purpose is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than procedural niceties." *Id.* at 755 (quotation marks and internal citations omitted). "Typically, the Court's practice is to liberally grant leave to amend where a pleading initially filed in state court is dismissed in federal court on the ground that it was insufficient under Federal Rule of Civil Procedure 8." *Vigil v. Tweed*, 1:18-cv-829 SCY/JFR, 2019 WL 45427777, at *2 (D.N.M. Sept. 19, 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The decision to grant leave to amend "lies within the district court's discretion." *Id.* Denial of such leave may be justified upon a showing of undue burden, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.[1] *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993).

## III. Analysis

The parties dispute only the issue of futility. *See* (Doc. 94); (Doc. 95). In his Motion to Amend, Mr. Escano contends amendment would not be futile because "the Court has already found that [he] has presented facts in certain response briefs that could have saved the [Original] Complaint if they were actually in the [Original] Complaint." (Doc. 89 at 5-6). Mr. Escano argues these additional facts, together with the facts alleged in the Original Complaint, state claims of direct liability against ForeverCar and both direct liability and vicarious liability against Liberty Mutual. *Id.* ForeverCar and Liberty Mutual dispute that the Proposed Amended Complaint adequately states claims against them. *See* (Doc. 94 at 11-15); (Doc. 95 at 7-15).

The Court need not grant leave to amend where the proposed amendment would be futile. *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) (internal quotation omitted). This standard includes dismissal "for any reason,"

---

[1] Rule 16's additional requirement that the plaintiff demonstrate good cause to amend the complaint does not apply here, because the Court has not yet entered a scheduling order setting amendment deadlines. *See* FED. R. CIV. P. 16(b)(4); *see also* (Doc. 45).

4

including failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001).

In order to state a claim under which relief can be granted, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678) (quotation marks omitted). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiff[]." *Leverington*, 643 F.3d at 723. The Court need not, however, accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

### A.     ForeverCar's Liability for the Telephone Calls

The Proposed Amended Complaint raises claims against ForeverCar under a theory of direct liability for violating the TCPA, the New Mexico Unfair Practices Act ("NMUPA"), NMSA 1978 § 57-12-22, and for committing trespass to chattels on the grounds that ForeverCar placed the thirteen telemarketing calls directly. *See generally* (Doc. 89-1). ForeverCar contends amendment by Mr. Escano is futile because he fails to adequately allege two of the requisite elements of direct liability. (Doc. 95 at 3, 7). That is, first, ForeverCar contends the Proposed Amended Complaint does not allege that ForeverCar *made* any of the thirteen calls, mainly because none of the callers ever mentioned ForeverCar by name. *Id.* at 7-12. Mr. Escano argues that, despite no explicit mention of ForeverCar during the calls, it is enough that he alleges ForeverCar made

the calls. (Doc. 98 at 2). In support, he contends the courts in the five cases cited by ForeverCar dismissed the complaint in those cases not because the callers never identified the defendant but because the complaint never even alleged the defendant *made* the calls. *Id.* at 7-11. He argues his case is distinguishable insofar as he does allege ForeverCar made the calls. *Id.*

Second, ForeverCar argues the proposed additions fail to allege the calls were placed by use of an ATDS. (Doc. 95 at 13-15). In particular, ForeverCar contends the Proposed Amended Complaint fails to allege that the ATDS equipment had the requisite functionality to store or produce "numbers using a random or sequential number generator[.]" *Id.* at 13 (citing *Facebook, Inc. v. Duguid*, __ U.S. __, 141 S. Ct. 1163, 1167). Mr. Escano maintains that, in order to allege ForeverCar's use of an ATDS, it is sufficient to state, as the proposed Amended Complaint does, that the "calls began with a digital beep or noticeable silence, or even the bare allegation of ATDS use by itself[.]" (Doc. 98 at 13).

"Congress enacted the TCPA primarily because [m]any consumers [were] outraged over the proliferation of intrusive, nuisance, [telemarketing] calls to their homes." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). As such, the TCPA bans certain invasive telemarketing practices, *id.* at 371, including certain automated calls and calls to consumers listed on the Do Not Call registry, *Childress v. DeSilva Automotive Servs., LLC*, 1:20-cv-136 JB/JHR, 2020 WL 3572909, at *8-9 (D.N.M. July 1, 2020). "A plaintiff successful in [a TCPA] action may recover her actual monetary loss or $500 for each violation, whichever is greater." *Campbell-Ewald Co. v. Gomez*, 577

U.S. 153, 156 (2016) (internal quotation marks omitted). "Damages may be trebled if the defendant willfully or knowingly violated the Act." *Id.* (internal quotation marks omitted).

To state a claim under Section 227(b) of the TCPA, the section which targets automated calls, "a plaintiff must allege that (1) the defendant made a telephone call (2) to the plaintiff's cellular phone (3) using 'any automated telephone dialing system or an artificial prerecorded voice[.]'" *Mestas v. CHW Group Inc.*, 508 F. Supp. 3d 1011, 1022 (D.N.M. 2020) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). To state such a claim under Section 227(c), the section which targets calls made to consumers on the Do Not Call registry, a plaintiff must allege the defendant "made more than one telephone solicitation to him in a 12-month period while his number was on the Do Not Call registry." *Valdes v. Nationwide Real Estate Executives, Inc.*, 20-cv-1734 DOC/JDEx, 2021 WL 2134159, at *4 (C.D.C.A. April 22, 2021); *see also* 47 § U.S.C. 227(c)(5). Courts analyze claims brought under the NMUPA and the common law theory of trespass to chattels together with TCPA claims. *See*, *e.g.*, *Mohon v. Agentra LLC*, 400 F. Supp. 1189, 1231-34, 1239 (D.N.M. 2019).

Here, the parties focus their dispute on Section 227(b), and particularly on (1) whether ForeverCar made the subject calls, and (2) whether ForeverCar used an ATDS to do so. As to the first, the Proposed Amended Complaint alleges Mr. Escano received thirteen calls between May 13, 2020, and January 26, 2021, and it alleges ForeverCar placed these calls. (Doc. 89-1 at ¶¶ 38-77). However, as the parties agree, it does not allege that any of the callers identified themselves as calling on behalf of ForeverCar, that any of the callers mentioned ForeverCar by name, or that any of the telephone numbers traced back to ForeverCar. *See generally id.*; *see also* (Doc. 95 at 7-12); (Doc.

7

98 at 2). Just the opposite: it alleges that several of the prerecorded messages and live callers announced other company names (e.g., "Auto Health Services," "Auto Warranty Services," the "Vehicle Service Department," and "Liberty Mutual"). *Id.* at ¶¶ 20, 82-84, 120. In an effort to explain this discrepancy, the Proposed Amended Complaint contends ForeverCar "spoof[s] the phone numbers from which it called" and "instruct[s] its employees not to immediately communicate the true name of the company calling[.]" *Id.* at ¶ 19.

The Court disagrees with Mr. Escano that the inquiry of who placed these thirteen calls "should end" with the bare allegation that ForeverCar made the calls. (Doc. 98 at 2). Such an assertion merely parrots the language of the TCPA. *Cf.* 47 U.S.C. § 227(b)(1) ("It shall be unlawful for any person . . . to make any call . . . using any automatic telephone dialing system or an artificial prerecorded voice . . ."). The Court is not required to accept this allegation as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating courts are "not bound to accept as true legal conclusions couched as factual allegation"); *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (stating a plaintiff is not entitled to proceed perforce by virtue of allegations that merely parrot the elements of the cause of action); *see also, e.g.*, *Bank v. Vivint Solar, Inc.*, 18-cv-2555 MKB/RLM, 2019 WL 1306064, at *5 (E.D.N.Y. Mar. 22, 2019) (noting it was a "conclusory statement that [d]efendant placed or directed the placement of [the call]"); *Norman v. Sito Mobile Sols.*, 17-cv-2215, 2017 WL 1330199, at *3 (D.N.J. Apr. 6, 2017) ("Plaintiffs must do more than simply parrot the statutory language . . . a plaintiff must at least describe, in layman's terms, the facts about the calls or circumstances surrounding the calls that make it plausible that they were made using an [ATDS]."); *Joseph v. ARS*

*Nat'l Servs.*, Inc., 1:13-cv-4123 JEC/RGV, 2014 WL 12774686, at *5 (N.D. Ga. Feb. 21, 2014) ("[Plaintiff's] conclusory assertion that [Defendant] used an ATDS is [] plainly insufficient to state a plausible claim under the TCPA").

That is not to say, however, as ForeverCar would have it, that the proposed amendment fails to adequately allege ForeverCar made the calls simply because none of the callers mentioned ForeverCar by name. (Doc. 95 at 7). The Court can imagine a variety of other factual allegations that could adequately connect ForeverCar to the thirteen calls. As such, the Court must consider the other factual allegations in the Proposed Amended Complaint to determine whether Mr. Escano adequately alleges it was ForeverCar who made the thirteen offending calls.

Those additional facts are alleged as follows. "ForeverCar offers VSPs for sale . . . via telephone[,]" and "at least two" of which ForeverCar "refers to as the 'Platinum plan' and 'Platinum Plus plan.'" *Id.* at ¶¶ 85, 89 (citing ForeverCar's alleged website). "ForeverCar and Concord offer VSPs directly to consumers on behalf of Liberty Mutual[]" because "Liberty Mutual does not offer VSPs directly to consumers." *Id.* at ¶¶ 107-108. In two of the thirteen telemarketing calls—the May 13, 2020 and January 19, 2021 calls—the caller "offered Plaintiff either of two different VSPs, which the representative called the 'Platinum plan' and 'Platinum Plus plan.'" (Doc. 89-1 at ¶ 39). In the January 19, 2021 call, the caller "told Plaintiff that the company he was calling from was Liberty Mutual, he works for Liberty Mutual, and the VSP he was offering was from Liberty Mutual." *Id.* at ¶ 120. Therefore, Mr. Escano alleges, the thirteen calls were placed by ForeverCar. The Court cannot deduce from these facts any plausibility, as opposed to conceivability, that it was ForeverCar who made the calls. See *Robbins v.*

9

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (requiring a plaintiff to "nudge[] their claims across the line from conceivable to plausible") (quoting *Twombly*, 550 U.S. at 570).

First, a caller's mere mention or solicitation of a product also offered by the defendant—in this case the Platinum and Platinum Plus plans—which the Court accepts as true, is not enough to adequately allege it was therefore the defendant who made the offending phone call. *See, e.g., Bank v. Spark Energy, LLC*, 19-cv-4478 PKC/LB, 2020 WL 5752185, at 4 (E.D.N.Y. Sept. 24, 2020) ("Plaintiff cannot plausibly allege that the [call was made] by Defendant if Defendant's name was not stated on the call, and the Complaint otherwise fails to allege other facts connecting the call to Defendant *beyond the call's promotion of Defendant's services*.") (emphasis added). Any number of entities may offer VSPs by those very same names, and indeed, Mr. Escano fails to allege Liberty Mutual and ForeverCar have any kind of exclusive business relationship.

In a similar vein, with regard to the January 19, 2021 call, the Court cannot conclude that ForeverCar placed that call simply because (1) the caller identified himself as a Liberty Mutual employee, (2) Liberty Mutual does not sell its own VSPs, but (3) ForeverCar sells VSPs on Liberty Mutual's behalf.[2] Liberty Mutual may contract with any number of other entities to sell VSPs on its behalf, which makes it just as likely that some entity other than ForeverCar made that call and identified itself as Liberty Mutual. Glaringly, the Proposed Amended Complaint does not allege that ForeverCar is the *only*

---

[2] The Proposed Amended Complaint attempts to link the other twelve calls to the January 19, 2021 call, alleging all thirteen calls share common hallmarks, in an effort to allege all the calls came "from the same entity." (Doc. 89-1 at ¶¶ 79-84). Given that, necessarily, the allegations concerning the other twelve calls suffer the same infirmity as the January 19, 2021 call.

company who sells VSPs for Liberty Mutual.³ *See generally* (Doc. 89-1). As this Court previously indicated, such an allegation could have "possibly cure[d] the deficiency." (Doc. 91 at 10-11). In other words, Mr. Escano's allegations, even as amended, fail to "nudge the[] claim[] across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

In sum, the Court is unable to plausibly infer from the allegations in the Proposed Amended Complaint that ForeverCar made any of the thirteen calls. The Proposed Amended Complaint does not allege that any caller identified ForeverCar by name during any of the calls, but rather that the callers identified a litany of other entities. None of the phone numbers associated with any of the calls are alleged to have traced back to ForeverCar. Mr. Escano does not allege that the products offered during the calls are products offered only by ForeverCar. He does not allege that ForeverCar is the only entity who offers VSPs on Liberty Mutual's behalf. For these reasons, the Proposed Amended Complaint fails to state a claim against ForeverCar under the TCPA, the NMUPA, or trespass to chattels. Accordingly, the Court finds that amendment as to ForeverCar would be futile.

### B.     Liberty Mutual's Liability for the Telephone Calls and Text Messages

Next, the Proposed Amended Complaint raises claims against Liberty Mutual under theories of both direct and vicarious liability for violating the TCPA, NMUPA, and

---

³ It is noteworthy that Mr. Escano also omitted this allegation from his Original Complaint, but that he raised it in briefing related to other motions previously before this Court. *See* (Doc. 37 at 4) ("The only company that the Liberty Defendants partner with to sell their VSCs is ForeverCar.") (emphasis in original). Recognizing this, the Court opined that "Mr. Escano has offered allegations of other facts[,]" including the allegation "that ForeverCar is the only company that sells vehicle service plans to Liberty Mutual[,]" which could "possibly cure the deficiency." (Doc. 91 at 10-11).

11

for committing trespass to chattels. *See generally* (Doc. 89-1). Liberty Mutual likewise contends amendment by Mr. Escano is futile. (Doc. 94 at 1). Liberty Mutual argues the Proposed Amended Complaint fails to state a claim for direct liability, because it inadequately alleges Liberty Mutual made any of the thirteen calls or transmitted any of the twenty-two text messages. *Id.* at 4, n.4, 6-7. Liberty Mutual also contends the Proposed Amended Complaint fails to state a claim for vicarious liability for the thirty-five communications, because it fails to adequately allege an agency relationship between Liberty Mutual and either ForeverCar or Concord. *Id.* at 11-15.

With regard to vicarious liability, Mr. Escano contends his proposed amendments allege an agency relationship between Liberty Mutual as the principal, and both ForeverCar and Concord as the agents, under a theory of apparent authority. (Doc. 98 at 16-17). Mr. Escano alternatively argues that, if the Court finds as it found before that he fails to state a claim of direct liability against ForeverCar for the thirteen calls and resultantly fails to state a claim of vicarious liability against Liberty Mutual, the Court should find the Proposed Amended Complaint states a claim against Liberty Mutual for direct liability. *Id.* at 20.

        i.        <u>Direct Liability</u>

As discussed elsewhere herein and as Mr. Escano acknowledges, the Proposed Amended Complaint proceeds primarily under a theory of direct liability against ForeverCar for the phone calls and Concord for the text messages, and under a theory of vicarious liability against Liberty Mutual for all thirty-five of the communications. *See* (Doc. 98 at 20) ("[T]he most sufficient form of the claims alleges direct liability as to ForeverCar and Concord, and vicarious liability as to Liberty Mutual[.]"). However, the

Proposed Amended Complaint states, "Plaintiff also alternatively alleges that Liberty Mutual initiated the calls and is thus directly liable for the calls." (Doc. 89-1 at ¶ 125).

The Federal Rules of Civil Procedure permit litigants to plead "statements of a claim or defense alternatively or hypothetically . . . regardless of consistency." FED. R. CIV. P. 8(d)(2). To be clear, this rule allows for alternative allegations of contradictory *claims*, not contradictory *facts*. *See Ulloa v. Takata Corp.*, 16-cv-6225 KMW/BCM, 2017 WL 1194691, at *3 (S.D.N.Y. Mar. 30, 2017) ("In justifying the complaint's inconsistencies, Plaintiff misreads Rule 8(d) to allow allegations of contradictory facts even though Rule 8 authorizes only allegations of contradictory claims.") (emphasis omitted); *Thomas v. Kamtek, Inc.*, 143 F. Supp. 3d 1179, 1189 (N.D. Ala. 2015) ("Contrary to alternative or inconsistent claims or defenses, 'factual assertions in pleadings are judicial admissions conclusively binding on the party that made them.'") (quoting D*avis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987)). Indeed, a litigant "may assert contradictory statements of fact [but] only when legitimately in doubt about the facts in question." *2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC*, 642 F. Supp. 2d 226, 240 (S.D.N.Y. 2009) (quoting *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996)).

The Proposed Amended Complaint alleges Liberty Mutual is directly liable, asserting that they "initiated the calls[.]" (Doc. 89-1 at ¶ 125). This directly contradicts his factual allegation that, even though the January 19, 2021 caller identified himself as a Liberty Mutual employee, the caller was actually a ForeverCar employee calling on Liberty Mutual's behalf, and thus that ForeverCar made the thirteen calls. *See id.* at ¶¶ 19, 20, 25, 120-123.

13

The Court can find no indication in the pleadings or the briefing that Mr. Escano is in doubt about the facts surrounding the thirteen calls. Rather, he purports to know the calls were made by ForeverCar, and he thus describes a detailed scheme by which ForeverCar generally hides its identity when placing these calls and specifically did so during the thirteen calls at issue. *See id.* at ¶¶ 19-20, 100. After all, Mr. Escano concedes that he pleads these facts in the alternative not because he is in doubt about the facts in question, but instead as a strategy to save his case from dismissal. *See* (Doc. 98 at 20 ("In the event the Court finds the [proposed Amended Complaint's] allegations insufficient to state a claim as to ForeverCar, then the [proposed Amended Complaint] would alternatively allege that Liberty Mutual initiated the calls in question and avoid such dilemma.")); (Doc. 89-1 at ¶ 124-125 ("In the event that it is found that ForeverCar did not call Plaintiff, he hereby expressly reserves the right to amend this Complaint to allege that a Doe Defendant was the caller and operated as an agent of Liberty Mutual . . . Plaintiff also alternatively alleges that Liberty Mutual initiated the calls[.]")).

This type of alternative factual pleading differs from the type courts typically permit. *See, e.g., Kikumura v. Osagie*, 461 F.3d 1269, 1296 (10th Cir. 2006) (permitting inconsistent allegations regarding the timing of medical treatment where plaintiff received inconsistent reports from prison officials about the timing of the calls to the infirmary); *Ulloa*, 2017 WL 1194691, at *1 (finding that whether the vehicle at issue was the subject of the recall should be known to Plaintiff's counsel); *Devincenzi v. City of Chico*, 2:11-cv-3268 KJM, 2012 WL 6571006, at *3-4 (E.D. Cal. Dec. 17, 2012) (permitting plaintiff, who was "extremely psychiatrically disturbed," to plead that his

14

conduct was either accidental or intentional, because the "ultimate facts may not be clear, and both alternative pleadings have evidentiary support"). For that reason, as well as the other reasons above, the Court finds Mr. Escano's inconsistent allegations regarding the thirteen calls undermine his claim against Liberty Mutual under a theory of direct liability. Therefore, he fails to state a claim of direct liability against Liberty Mutual.

      *ii.*      *Vicarious Liability*

Finally, the Proposed Amended Complaint asserts claims of vicarious liability against Liberty Mutual for the thirteen calls made by ForeverCar and the twenty-two text messages transmitted by Concord. A caller can be held either directly or vicariously liable for violating Sections 227(b) and 227(c) of the TCPA. *See Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1226 (D.N.M. 2019).

The FCC has interpreted Section 227 of the TCPA to impose vicarious liability on a defendant "pursuant to 'federal common law agency principles.'" *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1227 (D.N.M. 2019) (quoting *Dish Network, LLC*, FCC 13-54, 6574, ¶ 33, at 6586). "Courts have similarly held that '[a] defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it.'" *Mestas*, 508 F. Supp. 3d at 1023 (quoting *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018)). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Childress v. Liberty Mutual Ins. Co.*, 1:17-cv-1051 MV/KBM, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (quoting *Melito v. Am. Eagle Outfitters, Inc.*, 14-cv-2440, 2015 WL 7736547, at *6 (S.D.N.Y. Nov.

15

30, 2015); Restatement (Third) of Agency, § 1.01 (2006)). "[T]o plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiff[] must allege *some* facts regarding the relationship between an alleged principal and agent . . . and cannot simply allege general control in a vacuum." *Childress*, 2018 WL 4684209, at *3 (quoting *Melito*, 2015 WL 7736547, at *7) (emphasis in original).

### 1. Liberty Mutual and ForeverCar

As the Court previously noted with regard to the Original Complaint, the Proposed Amended Complaint contains specific factual allegations regarding the relationship between Liberty Mutual and ForeverCar, and those allegations adequately allege a relationship between the two companies. The Proposed Amended Complaint alleges, for instance, that "a webpage on ForeverCar's website stated that a [VSP] from Liberty Mutual powered By [sic] ForeverCar is an affordable way to protect yourself from the hassles of car repairs." (Doc. 89-1 at ¶ 127). It alleges that "[a]nother webpage on ForeverCar's website holds Liberty Mutual out as a partner in ForeverCar's VSP business." *Id.* at ¶ 129.

However, the Court need not consider whether the relationship between Liberty Mutual and ForeverCar amounted to an agency relationship because, as was the case before and as explained above, the Proposed Amended Complaint fails to state a claim against ForeverCar for direct liability. Therefore, the Proposed Amended Complaint fails to state a claim of vicarious liability against Liberty Mutual for the thirteen phone calls.

### 2. Liberty Mutual and Concord

The Proposed Amended Complaint attempts to connect Concord and Liberty Mutual by alleging that "Concord continued to send text messages to Plaintiff even after

Concord received a written demand from Plaintiff[,]" but that "Concord stopped sending Plaintiff text messages only after Liberty Mutual was served with the Original Complaint[.]" (Doc. 89-1 at ¶ 132-133). The Proposed Amended Complaint suggests a similar temporal proximity between the transmission of the twenty-two text messages and the placement of the thirteen phone calls. *Id.* at ¶ 134. Finally, the Proposed Amended Complaint alleges "Liberty Mutual had an agreement with Concord whereby Liberty Mutual would pay Concord for the customers it enrolled in Liberty Mutual's VSPs[,]" and "Liberty Mutual paid Concord accordingly." *Id.* at ¶ 135.

In this District, the body of law concerning vicarious liability in TCPA cases is thin. One of the few cases to address the issue, *Mestas v. CHW Group Inc.*, serves as a useful measuring stick against which to gauge the sufficiency of Mr. Escano's allegations. In that case, the Court found the complaint adequately alleged an agency relationship between CHW/Malawi, as the principal, and the callers, as the agents, because it alleged the following facts:

(1) Two of the five calls came from a number assigned to and controlled by CHW;
(2) CHW approved the script read during the calls;
(3) CHW approved the fake entity name used during the call;
(4) Two of the five callers identified the sponsor of the call as CHW/Mandalawi;
(5) Once CHW/Mandalawi was served in the case, the calls suddenly ceased;
(6) CHW/Mandalawi allowed the telemarketers access to information and operating systems within their control for the purposes of selling CHW's goods; and
(7) The callers initiated the calls to plaintiff pursuant to a contract with CHW, the terms of which, including payments and compensation to the telemarketers, Mandalawi approved.

*Id.* at 1023-24. The Court found, "[r]ead together, these allegations are sufficient to plausibly state that [the callers] were acting as agents of CHW/Mandalawi when they made the calls to Plaintiff." *Id.* at 1024.

Helpfully, the *Mestas* Court also explained why, conversely, the complaints in the handful of other TCPA cases in this District were found to be insufficient. *Id.* at 1024-25. The *Mestas* Court explained the complaint in *Childress v. Liberty Mutual Ins. Co.*, 2018 WL 4684209, alleged only that the call was transferred from an initial recorded message to the defendant's in-house telemarketer. *Mestas*, 508 F. Supp. at 1024. Otherwise, the complaint alleged no other facts of an agency relationship, not even alleging that the caller of the initial, pre-recorded message identified the purported principal as the sponsor of the call. *Id.*

Likewise, the *Mestas* Court explained the complaint in *Barker v. Sunrun Inc.*, 18-cv-855 KG/LF, 2019 WL 1983291, at *1-4 (D.N.M. Apr. 29, 2019), alleged only that the callers identified themselves as Smart Home Solar or Solar Works and never as Sunrun, the purported principal. *Mestas*, 508 F. Supp. at 1024. The complaint also alleged an agency relationship existed between Sunrun and the callers, but the Court found this to constitute a legal conclusion. *Id.*

The allegations in Mr. Escano's Proposed Amended Complaint compare more closely with *Childress* and *Barker* than with *Mestas*. The Proposed Amended Complaint alleges only three of the seven types of allegations relating to an agency relationship the plaintiff alleged in *Mestas*. That is, the Proposed Amended Complaint alleges only that: (1) Liberty Mutual authorized and controlled Concord's transmission of the text messages; (2) the text messages continued after Mr. Escano served Concord in this

18

case but then ceased after he served Liberty Mutual; and (3) Concord and Liberty Mutual had an agreement "whereby Liberty Mutual would pay Concord for the customers it enrolled in Liberty Mutual's VSPs[,]" and "Liberty Mutual paid Concord accordingly." (Doc. 89-1 at ¶¶ 132-135).

The first of these three allegations constitutes a legal conclusion, which the Court does not accept as true. *See, e.g.*, *Barker*, 2019 WL 1983291, at *4 ("Plaintiff's alleged connection, that the offending calls were directed buy or at least at the behest of Sunrun . . . constitutes a legal conclusion."). The other two allegations, which the Court does accept as true, certainly show some type of relationship between Concord and Liberty Mutual, but they do not sufficiently state an *agency* relationship between them— apparent or otherwise. *See Melito*, 2015 WL 7736547, at *7 (stating "plaintiffs cannot simply allege general control in a vacuum" where plaintiffs alleged the purported principal "had the right to control the sending of texts and in fact controlled and even scheduled the sending of each segment of the texts") (quotation marks omitted). As such, these allegations fail to nudge Mr. Escano's claim of an agency relationship between Liberty Mutual and Concord from conceivable to plausible. See *Robbins*, 519 F.3d at 1247 (citing *Twombly*, 550 U.S. at 570). Therefore, the proposed Amended Complaint fails to state a claim of vicarious liability against Liberty Mutual for the twenty-two text messages, and, as such, amendment would be futile.

As an additional note, Mr. Escano obtained a Clerk's entry of default against Concord, pursuant to Federal Rule of Civil Procedure 55(a), on August 6, 2021. (Doc. 62). The Court denied Mr. Escano's request for default judgment based on defects in the service, but granted him until October 31, 2021, to perfect service on Concord and

to refile a motion for default judgment. *See* (Doc. 67); (Doc. 71). Mr. Escano did not again attempt to obtain a default judgment against Concord in the six months since the Court's deadline, and his claims against the other defaulted Defendant, Mr. Salman, have been abandoned in the Proposed Amended Complaint. *See* (Doc. 89 at 4). In other words, as concerns his underlying claims against Concord (on which the vicarious liability claim is based), he has failed to prosecute his case against Concord. *See* D.N.M. LR-Civ. 41.1 ("A civil action may be dismissed if, for a period of ninety (90) days, no steps are taken to move the case forward."); *see also* FED. R. CIV. P. 4(m).

Accordingly, the Court finds that amendment as to Liberty Mutual should be denied. *See Duncan v. Manager, Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (noting that leave to amend may be denied "on a showing of undue delay" or "futility of amendment" among other reasons).

## IV. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Mr. Escano's *Motion to Amend Original Complaint*, (Doc. 89), be **DENIED**; and that this case be **DISMISSED WITH PREJUDICE**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE